Mr. Walls was denied any pre-termination hearing when he was fired on March 6, 2006. The firing letter is at ER-175. The district court agreed that as a long-term public employee who was not at will, he was entitled to that hearing unless he waived it. The court agreed that such a waiver must be knowing, intelligent, and voluntary. And the court's opinion is at ER-616. It certainly was not knowing. The last chance agreement, which is at ER-153 and 509, explicitly waived certain rights, but not this one. It said he couldn't grieve or arbitrate it if he had a dispute, if he was subsequently terminated under the last chance agreement. But it doesn't say anywhere that he can't have a pre-termination hearing. If he was given one, he undoubtedly would have given the doctor's note and the handwritten explanation he gave two days later on 3-8. And you can look at 3-4-8 and 3-4-9 in the excerpt of records. There are other problems with the due process waiver. It is not complete. What if County Connection considered firing Mr. Walls because of a physical altercation with a passenger? He claims self-defense or defense of others. Would he be entitled to a Skelly or a Loudermill hearing? Of course. He either – and my point here is that he either waives pre-termination claims or he doesn't. And he clearly doesn't waive it in a non-attendance context. So what does immediate termination mean in the context of the agreement? Well – You say he's entitled to a hearing. Immediate termination would seem to indicate something else. Well, immediate termination, given the Skelly or Loudermill hearing, and then he's fired. And that takes a day or two. I mean, it's not that big a deal. Because a pre-termination hearing is not – it's just a chance to respond. It's not – it's not a full-scale evidentiary hearing. Finally, as outlined in our brief, the draft – Part of the idea of a last-chance agreement is that there's a lowered requirement, in most cases, that a fault – I don't know what you're saying – it's not going to take a typical – Any violation, maybe however trivial, can serve as a basis for that. Wouldn't you agree? Depends. Any violation – what happens if it never happened? And if you have a legitimate defense, how can you bring that to them and say, listen, I didn't show up because I was held against my will or something. And the employer might say, okay, that's reasonable. But if they don't get a chance to hear that, then that's the problem. In other words, they're not going to have a grievance procedure. They're not going to have any procedure after the termination. The question is, can they – will they be able to hear this at all? And the pre-termination hearing gives that opportunity. Finally, as outlined in our brief, the drafter was not able to identify the waiver until after a break and a discussion with counsel. How knowing and intelligent can it be if the drafter doesn't even know it, that this bus driver is supposed to know it? Counsel, just on a practical level, if they did give him a further hearing before termination, he would be told that he had overslept one time too many and that this was counter to any rights that he might have under the pre-termination procedure. So at a practical level, he would have been fired because of his agreement in his last chance, which was, I'll come on time from now on. And he didn't. Well, Your Honor, I think that he might very well – there's a dispute of fact about whether this doctor's note had been received. And he's likely to say, like he said in his note, that, listen, I overslept because of my condition. And my doctor tells me it's treatable. And give me this leave until a month and a half from now, and then we'll be ready to go. Wasn't he given that option just a short time before? He could have said – He was not given that option. But wasn't he given the option before he took the last chance agreement to say – No, he was not. I can – hang on, let me finish my question. Let Judge Rosenthal finish your question. Wasn't one of the – wasn't one of the three options he was presented to say, I'm not yet ready to come back to work and then reapply for the position? Well, it's important to understand why reapplying is not that option. Reapplying means he would reapply and be denied, and he wouldn't be hired. And he knew that. Everybody knew that. And even if he was hired, he would start at the bottom. He would lose his pay. He would lose his seniority rights, which allows him to pick runs based on seniority. And he would go to the bottom of the list. But as a practical matter, he wouldn't have been hired. They wouldn't have hired him. And why would they? But, I mean, we're talking about practical consequences, and I appreciate that. But, I mean, in the real world here, the idea of a last-chance agreement is that otherwise he's going to be fired. And this is going to give him one more chance, but it lowered the – I mean, it has the most, in my estimation, most last-chance agreements. It gives the employer a bit more leverage in saying, I might otherwise excuse this behavior if it were the first time, but we don't have to excuse it. And I know you think that you could put on a defense saying, well, I was overslept because, you know, I was medicated and that's treatable. Maybe that would have worked before. But in a last-chance agreement, it seems to me the employer has a right to say, I'm sorry. That excuse is no longer viable. Well, the – So the question is, I mean, where is this going? If we grant relief, it just seems inevitable that your client is going to lose at the hearing anyway. Well, I mean – well, it's not in the record. But he's been working for a long time as a bus driver, and, you know, he doesn't have an attendance problem anymore. And, you know, we want to get him back. I mean, he's driving a paratransit vehicle for County Connection through a subcontractor. I mean, it's unfortunate. I under – I've read this, and I understand the situation. Okay. I want to go on to the FMLA portion of the case. The FMLA decision of the district court errs because it focuses on March 1st. He was hired on March 6th. He must assign work on March 3rd. On both of those dates, he was unquestionably an employee. On those dates, there is evidence that the employer knew of a serious health condition and of his need for leave. He needed the leave on March 3rd and thereafter, not on March 1st. His rights as an FMLA-protected employee were interfered with on March 3rd, and he was retaliated against because of his need for FMLA leave when he was fired on March 6th. One point in the district court's opinion, and the Respondent's brief also want to note, Mr. Wall's attendance in 2002 or earlier is just not relevant. The employer already agreed to that. In the union agreement in Section 52.01a, which is in the excerpts of record at 96 and also at 491, provides disciplinary infractions which occurred more than three years prior to the most recent infraction will not be considered when reviewing the most recent infraction and determining the discipline. If the employer did not consider it, the district court cannot rely on it. And in my view, Mr. Wall is entitled to a pre-termination due process hearing, and he didn't get it. And he was also entitled to FMLA leave, and he didn't get it. And the order of the district court should be reversed. So I'll reserve any additional time. Thank you, Counsel. Good morning, Your Honors. My name is Molly Lee. I represent Respondent Central Contra Costa Transit Authority, which we refer to as 3CTA. This case is about a public transportation employer's ability to manage its workforce in order to provide timely service to the community it serves. The appellant in this case didn't call in to work. That's undisputed. He did this multiple times. That's what led to his first termination. And he didn't call in before his March 3rd absence. That's what led to his second termination. He would not have been fired had he called in. These are undisputed facts. But he didn't. He was appropriately terminated. And for that reason, he was appropriately terminated. With respect to the due process issue, Mr. Walls waived his right to a pre-termination hearing when he signed the last-chance agreement. Appellant does not dispute that he waived his rights to his post-termination proceedings. So we're only going to address the pre-termination proceeding. And in this case, the operative term in the last-chance agreement is immediate. It's a clear term. What does that suggest, that he's giving up his right to a hearing? Immediate means it is a. . . You heard my question. I mean, I take your point. But, I mean, usually when you waive your right to a hearing, it says, I waive my right to a hearing. Well, the case law cited in our brief provides that specific terms, magic words, are not required, that providing for immediate termination is the same as waiving a right to a pre-termination hearing. Was there a negative implication from the fact that there was an explicit waiver of post-termination procedural rights but not of pre-termination rights? No, Your Honor. The term immediate deals with the pre-termination hearing, and the term, the phrase no recourse to the grievance procedure deals with the post-termination proceedings, so we don't see any inconsistency there. The immediate phrase means upon a violation of the terms, the employer has the right to terminate. The termination is effective. She said the immediate can also mean that you don't give 30 days' notice. It can mean that, too, but. . . So if it's susceptible of two meetings and you can do a post-hearing, have a hearing within a couple of days after the incident, what's wrong with that construction of the document? Well, a couple of days after the hearing is not immediate. And. . . Well, I think it's immediate in the employment law versus a period of notice. Okay. I see your point. But in this case, the real question is whether Mr. Walls, knowing involuntarily, waived his right to a pre-termination hearing by agreeing to an immediate termination, and we would submit that he did. He had ample time. He negotiated the terms of this agreement, and that's in the record with his union representative. He was represented by his union through the entire proceedings. He testified that his union representative explained the terms of the agreement to him and that he understood the terms. And so under that circumstances, we submit that immediate termination meant that he waived his pre-termination hearing and also that he knowingly understood that's what it meant. Is there a case law that suggests that the combination of the word immediate and the nature of the agreement, last chance, support interpreting this as waiving pre-termination rights? I believe the closest case on that point is Robeson v. City of Manteca, which is a California court of appeals case, which relates directly to his California due process claim. And we submit that it also should be applied to his Federal due process claim. And in that case, they discussed what was essentially a last chance agreement related to the employee's drug use, saying that when it provided for immediate termination, that that was sufficient to waive all due process procedures. There's also an Eastern District of Michigan case that reflects the same thing. But there is not a Ninth Circuit opinion that I'm aware of that directly relates to this issue. Just briefly, Appellant's argument that the drafter misunderstood the agreement, we don't believe that to be the case. She did identify the language as the waiver. But regardless, the drafter's understanding of the legal consequences of the document is not relevant here. What is relevant is the law. And I'm not going to go into the specifics of the argument. I'm just going to say that I don't believe that the drafter misunderstood the agreement. So to the extent that there are inferences and ambiguities, they have to be construed in the favor of the plaintiff. How do you respond to that? I understand that. But I don't think the implication from what he's arguing, that this rises to the level of a material fact that warrants a trial. What is relevant was Mr. Wall's understanding, not Ms. Rettig's understanding. And as I stated before, he had representation through this proceeding and testified that the terms of the agreement were explained to him. And so the facts of the record indicate that he knew what he was doing and that this was an intelligent and voluntary waiver. Appellant also argues that his only option as opposed to signing last chance agreement was to wait and reapply and to see. And he, without any facts, says that he wouldn't be hired. That wasn't his only option. This was part of a grievance procedure. At that point in time, he did have the option to continue with his grievance represented by his union up to and including arbitration. He chose to forego that right instead, represented by agreeing to come back to work that he wanted to work immediately. Do you want to address the Family Leave Act? Yes, Your Honor. The Family Leave Act claim fails for two reasons. First of all, he never requested leave at a time when he was an employee. The time when he allegedly requested leave was March 1st before he was reinstated. That is undisputed. Because there was no request for leave once he was hired, there was no antecedent act that would have entitled him to his Family Medical Leave Act. Regardless of whether this Court agrees that he needed to request leave on the second when he was an employee or not, what is dispositive here is the fact that he didn't call in. Mr. Walls was not terminated for missing work. He was terminated for not calling dispatch beforehand. It's undisputed that the last chance agreement gave him another opportunity to miss work, to say to call in and say he was sick. So it is not the absence that's the issue. It's his failure to call in. Counsel, if he were to call in after he's overslept, is that going to be available to him if he makes his call in after he's slept and not advise them that they must get somebody else? No, Your Honor. The leave policy provides that he has to call in at least 45 minutes before his shift. So once that 45-minute mark is missed, it's characterized as a miss out, which is a no-call, no-show. But at any rate, he didn't call in after he woke up. He testified that he woke up in the evening and didn't call in there. He didn't call in for three days, in fact, even though he testified that he knew dispatch was there 24 hours a day and dispatch was the appropriate person to call in. He waited until the 6th to call. That's three days. So no, even if he had called in when he woke up, no, I don't think that would have changed the situation here. But the facts do not indicate that he did that. He waited a significant period of time before calling in. I don't know why we even talk about that. Okay. I'm not sure, Your Honor. So the FMLA regulations and case law also provide that when an employee, whether he's on medical leave or not, for whatever reason, he's out or she is out, that the employer is entitled to enforce their usual and customary call-in procedures. And the only thing that can justify a failure to call in in this sort of situation is a medical emergency. The regulations use an example of someone having an asthma attack in a hospital where they're physically unable to make a phone call. And certainly the facts do not support a finding of a medical emergency here, nor has appellant alleged there wasn't a medical emergency. He overslept. And whether that was because of his medication or not, we don't know. He didn't tell anyone at 3CTA that he was having a medical emergency. He called in and said he was sleeping. So because of those circumstances, his failure to call in was not justified. And 3CTA was entitled to terminate him for his failure to call in. I think we have your argument at hand. Any further questions from the panel? Thank you, Your Honor. Thank you. Counsel just cited the regulations under FMLA, and those regulations were not in effect at the time. And one of the cases that counsel brought to the attention of the court by her letter last week or this week was Righi, R-I-G-H-I v. S-M-C Corporation. And that court correctly notes that on page 408 of 632 F-3rd that you look at the regulations that were in effect at the time, and the regulations that were in effect at the time didn't mention anything about the employer's calling procedures. Okay. Thank you. Thank you, counsel. The case just shortly submitted for decision. Thank you both for your arguments.
judges: Rosenthal, Fletcher B. , Thomas